**BROWN NERI, SMITH & KHAN LLP**
Nathan M. Smith
11601 Wilshire Blvd, Suite 2080
Los Angeles, CA 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980
nate@bnsklaw.com

**FINKELSTEIN, BLANKINSHIP
FREI-PEARSON & GARBER, LLP**
Jeremiah Frei-Pearson
(*Pro Hac Vice* application forthcoming)
Chantal Khalil
(*Pro Hac Vice* application forthcoming)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 298-3329
jfrei-pearson@fbfglaw.com
ckhalil@fbfglaw.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Aniledis Batista and Paul Sohayegh, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Apple Inc.,<br><br>Defendant. | **Civil Action No.** _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

{00289789 }

Plaintiffs Aniledis Batista and Paul Sohayegh (collectively, "Plaintiffs"), individually and on behalf of other similarly situated individuals, by and through their undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Brown, Neri, Smith & Khan, LLP, file this Class Action Complaint against Apple Inc. ("Apple" or "Defendant") and allege the following based on personal knowledge, the investigation of counsel, information, and belief.

## NATURE OF THE ACTION

1. Plaintiffs bring this action against Apple for deceptive trade practices and false advertising in violation of New York General Business Law § 349 and § 350 and the common law. Plaintiffs and other owners of Apple's iPhone models 7, 6S, 6, and SE (collectively, "older iPhones") were harmed when their devices' software or operating systems ("iOS") were updated to the then-newest version ("iOS updates"). The iOS updates significantly slowed down their iPhones and interfered with the normal usage of their devices, leaving Plaintiffs with a difficult choice: to continue using a slow and at time inoperable device that disrupts everyday life, or spend hundreds of dollars to purchase a new phone.

2. Apple explicitly represented to Plaintiffs and the public that its iOS updates are compatible with and support older iPhones, as evidenced by the fact that Plaintiffs and Class Members were prompted to install the iOS updates on their iPhones.

3. Following media traction of reports on Reddit, Geekbench, and various technology news sites evidencing Apple's planned obsolescence of older iPhones, on December 20, 2017, Apple admitted that it has been deliberately slowing the performance (formally referred to as the "CPU" or "CPU Frequency") of older iPhones.

4.      As a result of Apple's deceptive and unlawful conduct, millions of consumers are led to believe that their iPhones have become obsolete and are consequently compelled to purchase the most recent iPhone model(s), which are currently the iPhone 8 and iPhone X.  Customers who choose not to or cannot afford new iPhones, which generally cost several hundreds of dollars, are left with iPhones with drastically diminished performance such that they are effectively useless.

5.      This action centers upon Apple's negligent, reckless, or intentional omission or failure to disclose to Plaintiffs and Class Members, at the time of purchase and at the time they downloaded Apple's iOS updates, that the new operating system would materially slow down and/or otherwise interfere with the operation of their iPhones.  Apple represented and advertised at the moment before, or of, download that iOS updates would improve performance Plaintiffs' and Class Members devices, a statement Apple admittedly knew to be false.

**PARTIES**

6.      Plaintiff Aniledis Batista ("Ms. Batista") is a resident of Copiague, New York.  Ms. Batista owned and operated an iPhone 7.  Ms. Batista purchased her iPhone 7 in August of 2017.  Ms. Batista updated her iPhone's iOS when prompted to do so.  Immediately after installing the update, Ms. Batista's iPhone's performance slowed drastically, the iOS regularly crashes, and her iPhone often inexplicably shuts down.  Likewise, applications such as simple text messaging and phone call applications are routinely inoperable.  Thus, the iOS updates rendered Ms. Batista's iPhone useless.

7.      Plaintiff Paul Sohayegh ("Mr. Sohayegh") is a resident of Old Westbury, New York.  Mr. Sohayegh purchased, owned, and operated an iPhone 6S.  Mr. Sohayegh

downloaded the iPhone's updated iOS when prompted to do so.  Mr. Sohayegh's family members likewise downloaded the iOS updates on their iPhones (also purchased by Mr. Sohayegh) when prompted to do so.  Subsequently, Mr. Sohayegh and his family members noticed that their iPhones' performances slowed drastically, that the operating systems would often crash altogether, and that the iPhones would inexplicably shut down.  Likewise, Applications such as simple text messaging and phone call applications became routinely inoperable.  Thus, the iOS updates rendered Mr. Sohayegh's and his family members' iPhones useless .  The lack of functionality of their iPhones prompted Mr. Sohayegh to purchase new iPhones for himself and his family members.  Had it not been for the problems promulgated by the update, Mr. Sohayegh would not have purchased new iPhones for his family members or himself.

8. Defendant Apple Inc. is a California corporation with its headquarters and principal place of business located at 1 Infinite Loop in Cupertino, California.

## JURISDICTION AND VENUE

9. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class Members, a majority of Class Members are citizens of states that are diverse from Apple, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

10. This Court has personal jurisdiction over Apple because Apple was incorporated in California, maintains its principal place of business in this District, is registered to conduct business in California, and has sufficient minimum contacts with California.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because

{00289789 }                                        4

Apple resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

12.     Over the course of the past year, Apple released various iOS updates that intentionally and deceptively debilitated the functionality of older iPhones, causing the devices to dramatically slow down and interfering with normal usage.  The relevant iOS updates include: iOS 10.2.1 (released on January 23, 2017); iOS 10.3 (released on March 27, 2017); iOS 10.3.1 (released on April 3, 2017); iOS 10.3.2 (released on May 15, 2017); iOS 10.3.3 (released on July 19, 2017) (collectively, "iOS 10 update"); iOS 11.0.1 (released on September 26, 2017); iOS 11.0.2 (released on October 3, 2017); iOS 11.0.3 (released on October 11, 2017); iOS 11.1 (released on October 31, 2017); iOS 11.1.1 (released on November 9, 2017); iOS 11.1.2 (released on November 16, 2017); iOS 11.2 (released on December 2, 2017); and iOS 11.2.1 (released on December 13, 2017) (collectively, "iOS 11 updates").

13.     Apple represented and advertised that all of the various iOS updates are compatible with and support older iPhones, as evidenced by the fact that Plaintiffs and Class Members were prompted to install the iOS updates on their iPhones.

14.     At or immediately preceding the time of download for each iOS update, Apple represented and advertised that the iOS updates were designed to improve device performance.

15.     Notwithstanding, Plaintiffs and Class Members quickly noticed that, soon after downloading the iOS updates, their iPhones were no longer operable for normal use. Instead, Plaintiffs and Class Members experienced drastic performance slowdowns,

delayed or non-responses to touch and voice interactions, software and application freezes and crashes, and spontaneous shut downs.

16. The resultant problems permeated even the core functions of Plaintiffs' and Class Members' devices, preventing them from making and receiving phone calls, text messaging, and emailing.

17. Following media traction of reports on Reddit, Geekbench, and various technology news sites substantiating speculation that Apple was engaging in planned obsolescence of older iPhones,[1] on December 20, 2017, Apple released a statement in which it admitted that it has been deliberately slowing the performance of older iPhones:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices.  Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.
>
> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions.  We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.[2]

18. Apple failed to inform and/or warn Plaintiffs and Class Members that it engineered its iOS updates to slow down the performance of older iPhones and that

---

[1] *See, e.g.*, TeckFire, *PSA: iPhone slow?  Try replacing your battery!*, REDDIT (Dec. 9, 2017), https://www.reddit.com/r/iphone/comments/7inu45/psa_iphone_slow_try_replacing_your_battery/; John Poole, *iPhone Performance and Battery Age*, GEEKBENCH (Dec. 18, 2017), https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/.

[2] Bill Chappell, *Apple Says It Slows Older iPhones To Save Their Battery Life*, NPR (Dec. 21, 2017), https://www.npr.org/sections/thetwo-way/2017/12/21/572538593/apple-says-it-slows-older-iphones-to-save-their-battery-life.

{00289789 }                                        6

installing the iOS updates would intentionally slow their devices and prevent older iPhones from reaching their full processing power.  Rather, Apple falsely and deceptively represented and advertised that the iOS updates would improve performance.

19.     While Apple asserts that the deliberate slowdowns were designed to enhance functionality and performance, in part by prolonging battery life, Plaintiffs and Class members have experienced reduced battery life as a direct result of the iOS 10 and 11 updates.

20.     By failing to disclose that iOS updates were designed to intentionally reduce the CPU on certain iPhone models, iPhone consumers would be more likely to attribute degraded performance to the device rather than battery, prompting consumers to believe it is necessary to upgrade their iPhones rather than simply replace the batteries.

21.     Apple failed to inform Plaintiff and Class Members that the battery issues it purportedly sought to delay could have been quickly and relatively inexpensively remedied by simply replacing batteries.  Indeed, iPhone owners with aging batteries could go to a third-party repair shop and replace aged batteries with new ones for $20 to $70 (depending on location and iPhone model),[3] or to an Apple store and receive a battery replacement for $79 (with includes a one-year warranty).[4]

22.     Upon information and belief, as a consequence of Apple's iOS updates, consumers with older iPhones no longer have the option of battery replacement to restore

---

[3] Niraj Chokshi, *Is Apple Slowing Down Old iPhones?  Questions and Answers*, N.Y. TIMES (Dec. 21, 2017), https://www.nytimes.com/2017/12/21/technology/iphone-battery-problem-slow.html.

[4] TeckFire, *PSA: iPhone slow?  Try replacing your battery!*, REDDIT (Dec. 9, 2017), https://www.reddit.com/r/iphone/comments/7inu45/psa_iphone_slow_try_replacing_your_battery/.

{00289789 }                                         7

device performance, as the performance degradations apply based on iPhone model rather than extent of battery erosion.

23. Moreover, Apple represents and advertises that many of its iOS updates include "bug fixes" or "improved security," *i.e.*, the updated software patches security risks that have since been discovery in the devices' iOS.

24. When prompting iPhone owners to install updates for enhance security or fix bugs, Apple does not disclose that the iOS updates will also detrimentally impact device functionality.

25. iPhone owners who receive prompts to install iOS updates that include security enhancements will often download the iOS updates without hesitation, as refusing the update would leave their devices and personal information vulnerable to digital security risks such as hacking.

26. Apple does not permit iPhone owners to selectively download its security improvements while rejecting other aspects of iOS updates.

27. Furthermore, Apple actively encourages consumers to install iOS updates by repeatedly displaying reminders and notifications on consumers' iPhone screens until consumers agree to install the new iOS.

28. Apple does not allow iPhone owners to reverse or uninstall the iOS 10 or iOS 11 updates and to use their prior, better-functioning iOS.  Defendant does not warn the consumer that its iOS updates are irreversible.

29. Apple intentionally concealed material information from Plaintiffs and Class Members when failing to inform them that its iOS updates, purported designed to extend battery life, were engineered to significantly slow their devices' performance – so

{00289789 }                                                  8

1  much so that many iPhone owners would feel compelled to purchase a new phone all together.

30.   Apple intentionally concealed this information and encourages iOS updates in order to increase profits at Plaintiffs' and Class Members' expenses, *i.e.*, by forcing Plaintiffs and Class Members to purchase its newest devices.  Indeed, Apple knows that many iPhone consumers will prefer to purchase new iPhone phones rather than switch manufacturers for various reasons.  Consequently, Apple stands to benefit financially when it damages the performance of older iPhones, which causes owners to purchase a new phone.

**CLASS ALLEGATIONS**

31.   Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action against Apple as a class action on behalf of themselves and all members of the following class of similarly situated persons (the "Class" or "Class Members"):

> "All individuals and entities in New York who own or owned an iPhone 7, 6S, 6, or SE, and installed one or more iOS 10 updates or iOS 11 updates."

32.   Plaintiffs reserve the right to amend the above definition(s), or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

33.   Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant have or had a controlling interest, or which Defendant otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendant.

34.   This action satisfies the requirements for a class action under Rule 23.

35.   Plaintiffs believe that the proposed Class as described above consists of hundreds of thousands of members and can be identified through Apple's records, though

the exact number and identities of the Class Members are currently unknown. The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

36. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members. Common questions include, but are not limited to, the following:

    a. whether Defendant's representations and advertisements to older iPhone owners concerning the iOS 10 and iOS 11 Updates constitute unfair or deceptive business practices in violation of § 349 of New York General Business Law;

    b. whether Defendant's use of iOS updates to deliberately reduce the performance of older iPhones without the knowledge or consent of Plaintiffs and Class Members constitutes unfair or deceptive business practices in violation of § 349 of New York General Business Law;

    c. whether Defendant's omissions concerning the adverse impacts of the iOS updates constitute unfair or deceptive business practices in violation of § 349 of New York General Business Law;

    d. whether Defendant's omissions concerning alternate methods of remedying battery life issues constitute unfair or deceptive business practices in violation of § 349 of New York General Business Law;

    e. whether Defendant's representations and advertisements to older iPhone owners concerning the iOS 10 and iOS 11 Updates constitute unfair or deceptive advertising in violation of § 350 of New York General Business Law;

    f. whether Defendant's omissions concerning the adverse impacts of

the iOS updates constitute unfair or deceptive advertising in violation of § 350 of New York General Business Law;

   g. whether Defendant's omissions concerning alternate methods of remedying battery life issues constitute unfair or deceptive advertising in violation of § 350 of New York General Business Law;

   h. whether Defendant breached the implied covenant of good faith and fair dealing by deliberately and secretly degrading the performance, quality, and functionality of older iPhones through its iOS updates;

   i. whether Defendant unjustly enriched itself at Plaintiffs' and Class Members' expenses by deliberately and secretly degrading the performance, quality, and functionality of older iPhones through its iOS updates;

 37. The claims asserted by Plaintiffs are typical of the claims of the Members of the Class they seek to represent because, among other things, Plaintiffs and Class Members sustained similar injuries as a result of Apple's uniform wrongful conduct; Apple owed the same duty to each Class Member; and Class Members' legal claims arise from the same conduct by Apple.

 38. Plaintiffs will fairly and adequately protect the interests of the proposed Class.  Plaintiffs' interests do not conflict with the Class Members' interests.  Plaintiffs have retained class counsel experienced in class action litigation to prosecute this case on behalf of the Class.

 39. Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

{00289789 }        11

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the hundreds of thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiffs and Class Members' claims on a class basis, however, is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

41. Certification of the Class is also appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Apple.

42. Certification of the Class is also appropriate under FED. R. CIV. P. 23(b)(2) because Apple has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

43. Certification of the Class, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

44. Apple's wrongful actions and omissions are generally applicable to the Class as a whole and, therefore, Plaintiffs also seek equitable remedies for the Class.

45. Apple's systemic policies and practices also make injunctive relief for the Class appropriate.

46. Absent a class action, Apple will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiffs and Class Members.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**(New York General Business Law § 349)**

47. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

48. Plaintiffs bring this claim on behalf of themselves and the Class.

49. Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349.

50. Defendant's acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

51. Defendant's misrepresentations and false, deceptive, and materially misleading statements, representations, and omissions with respect to the iOS updates, as described above, constitute deceptive practices in violation of N.Y. GEN. BUS. LAW § 349.

52. Defendant's false, deceptive, and misleading statements, representations, and omissions would have been material to any older iPhone user.

53. Defendant knew at the time it promised enhanced and improved performance that its promise was false because at the time Defendant was deliberately engineering the iOS updates to reduce device performance.

54. Defendant's intentional concealments were designed to deceive older iPhone users into installing iOS updates, which severely degrade device performance and effectively render their iPhones inoperable.

55. By concealing the adverse impacts of the iOS updates, Defendant benefits from the purchase of newer iPhone models.

56. Defendant intentionally concealed that iOS updates were designed to reduce the effectiveness of the CPU on certain iPhone models so that iPhone consumers would believe it is necessary to purchase new iPhones.

57. Defendant's practices are unconscionable and outside the norm of reasonable business practices.

58. As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiffs and Class Members installed iOS updates and suffered and continue to suffer an ascertainable loss of monies based on loss of functionality, loss in value, and irreversible destruction of their iPhones, and the costs of replacement batteries and phones. By reason of the foregoing, Defendant is liable to Plaintiffs and Class Members for trebled compensatory damages, attorneys' fees, and the costs of this suit.

59. Plaintiffs and Class Members further seek equitable relief against Defendant. Pursuant to N.Y. GEN. BUS. LAW § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices as alleged herein to be unlawful, an Order enjoining Defendant from undertaking any further unlawful conduct, an Order directing Defendant to refund to Plaintiffs and the Class all amounts wrongfully assessed, collected, or withheld, and an Order requiring Apple to issue an iOS update that reverses the damage done by prior updates.

60. Defendant knowingly and willfully deceptively induces consumers to install iOS updates that will significantly degrade performance so that it can reap outrageous profits to the direct detriment of New York consumers. Defendant is therefore additionally

liable for triple damages.

## SECOND CAUSE OF ACTION
### (New York General Business Law § 350)

61. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

62. Plaintiffs bring this claim on behalf of themselves and the Class.

63. Defendant has engaged in, and continues to engage in, false advertising in violation of N.Y. GEN. BUS. LAW § 350.

64. Defendant's acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

65. Defendant's advertisements and false, deceptive, and materially misleading statements, representations, and omissions with respect to the iOS updates, as described above, constitute deceptive practices in violation of N.Y. GEN. BUS. LAW § 350.

66. Defendant's false, deceptive, and misleading advertisements, statements, representations, and omissions would have been material to any older iPhone user.

67. Defendant knew at the time it promised enhanced and improved performance that its promise was false because at the time Defendant was deliberately engineering the iOS updates to reduce device performance.

68. Defendant's intentional concealments in its advertising were designed to deceive older iPhone users into installing iOS updates, which severely degrade device performance and effectively render their iPhones inoperable.

69. By concealing the adverse impacts of the iOS updates, Defendant benefits from the purchase of newer iPhone models.

70. Defendant intentionally concealed that iOS updates were designed to reduce

the CPU on certain iPhone models so that iPhone consumers would believe it is necessary to purchase new iPhones.

71. Defendant's practices are unconscionable and outside the norm of reasonable business practices.

72. As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiffs and Class Members installed iOS updates and suffered and continue to suffer an ascertainable loss of monies based on loss of functionality, loss in value, and irreversible destruction of their iPhones, and the costs of replacement batteries and phones. By reason of the foregoing, Defendant is liable to Plaintiffs and Class Members for trebled compensatory damages, attorneys' fees, and the costs of this suit.

73. Plaintiffs and Class Members further seek equitable relief against Defendant. Pursuant to N.Y. GEN. BUS. LAW § 350, this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices as alleged herein to be unlawful, an Order enjoining Defendant from undertaking any further unlawful conduct, and an order directing Defendant to refund to Plaintiffs and the Class all amounts wrongfully assessed, collected, or withheld.

74. Defendant knows full well that it deceptively induces consumers to install iOS updates that will significantly degrade performance so that it can reap outrageous profits to the direct detriment of New York consumers. As such, Defendant's actions are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, or accompanied by wanton and willful disregard for consumers' well-being. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

75. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

76. Plaintiffs bring this claim on behalf of themselves and the Class.

77. Every contract in New York contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

78. Upon prompting Plaintiffs and Class Members to install iOS updates, Defendant represented that the upgrades were compatible with and support older iPhones and would enhance performance.

79. Plaintiffs reasonably expected that the iOS updates were compatible with and support their iPhones and would enhance performance. Plaintiffs also reasonably expected that Apple would not recommend installing software that would significantly diminish device capacity, performance, and functionality. Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to install the iOS updates.

80. Defendant breached the implied covenant of good faith and fair dealing by engaging in affirmative misrepresentations, concealments, and omissions in bad faith, thereby frustrating Plaintiffs and other Class Members' reasonable expectations concerning their iPhones and the iOS updates. Defendant also breached the implied covenant of good faith and fair dealing by issuing an iOS update knowing that it would damage the performance of iPhones to the extent that they did not perform as Plaintiffs and the public

reasonably expected them to perform.

81. As a direct and proximate result of Defendant's breach, Defendant is liable to Plaintiffs and Class Members for actual damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

82. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

83. Plaintiffs bring this claim on behalf of themselves and the Class.

84. Apple, by way of its affirmative actions and omissions, knowingly and deliberately enriched itself by deliberately and secretly slowing Class Members' iPhones.

85. Apple consciously and opportunistically issued the iOS updates to increase its own profits at the expense of Plaintiffs and Class Members.

86. Apple continued to obtain the benefits conferred on it by Plaintiffs' and Class Members' business, including but not limited to purchase of new iPhones and applications from Apple's App Store.

87. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result. As a result of Apple's decision to profit by rendering Plaintiffs' and Class Members' iPhones effectively useless, Plaintiffs and Class Members suffered and continue to suffer considerable injuries in the forms of, *inter alia*, loss of functionality, loss in value, and irreversible destruction of their iPhones, and the costs of replacement.

88. Accordingly, Plaintiffs, on behalf of themselves and the Class Members, respectfully request this Court award relief in the form of restitution and compensatory damages

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that the Court grant relief against Defendant as follows:

1. For an Order certifying the proposed Class pursuant to FED. R. CIV. P. 23(b)(1), (2) and/or (3), requiring notice thereto to be paid by Defendant, and appointing Plaintiffs and their counsel to represent the Class;

2. Adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

3. For appropriate injunctive relief and/or declaratory relief, including an Order enjoining Defendant's unlawful conduct;

4. For compensatory, statutory, general damages, trebled according to proof on certain causes of action;

5. For reimbursement, restitution, and disgorgement on certain causes of action;

6. For an Order awarding Plaintiffs and the Class reasonable attorney's fees and expenses for the costs of this suit;

7. For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded; and

8. For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand trial by jury of all claims and causes of action in this lawsuit to which they are so entitled.

Dated: December 28, 2017

Respectfully submitted,

/s/Nathan M. Smith

Nathan M. Smith
BROWN NERI, SMITH & KHAN LLP
11766 Wilshire Blvd, Suite 1670
Los Angeles, CA 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980
nate@bnsklaw.com

Jeremiah Frei-Pearson
(*Pro Hac Vice* application forthcoming)
Chantal Khalil
(*Pro Hac Vice* application forthcoming)
FINKELSTEIN, BLANKINSHIP
FREI-PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 298-3329
jfrei-pearson@fbfglaw.com
ckhalil@fbfglaw.com

*Attorneys for Plaintiffs and the Putative Class*